IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-cv-123

| | | |
|---|---|---|
| KORDUN EXPRESS INC. and FLOYD INC., | ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) ) | Jury Trial Demanded |
| LASZLO ALMASI, | ) ) | |
| Defendant. | ) | |

Kordun Express Inc. ("Kordun") and Floyd Inc. ("Floyd") bring this complaint for defamation and unfair and deceptive trade practices against Laszlo Almasi. In support, they state:

**Nature of Case**

1. Lurch Logistics, LLC ("Lurch"), a trucking broker, hired Kordun, a motor carrier, to transport cargo for certain of Lurch's customers. Laszlo Almasi, Lurch's principal, then posted defamatory and false statements about Kordun and Floyd on www.carrier411.com, a website trucking brokers use to research motor carriers. The defamatory statements have caused financial damage to Kordun's and Floyd's businesses and will continue to damage their businesses. Kordun requested that Almasi remove his defamatory posts, and Almasi refused.

**Parties, Jurisdiction, and Venue**

2. Kordun is an Illinois corporation registered and with its principal place of business in Illinois.

3. Floyd is an Illinois corporation registered and with its principal place of business in Illinois.

4. Laszlo Almasi ("Almasi") is, on information and belief, the sole owner of or interest holder in Lurch.

5. Almasi is, on information and belief, a citizen of North Carolina, residing and domiciled in Hampstead, which is in Pender County.

6. On information and belief, Almasi made the defamatory statements at issue in this case in Pender County, North Carolina.

7. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the plaintiffs, Kordun and Floyd, are citizens of Illinois, the defendant, Almasi, is a citizen of North Carolina, and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because Almasi resides in this district and the events giving rise to this action occurred, in part, in this district.

**Factual Allegations**

9. In 2020 and 2021, Kordun carried several shipments brokered by Almasi and Lurch.

10. In or around March 2021, Lurch contracted with Kordun to deliver three shipments.

11. On or before March 29, 2021, Almasi accused Kordun of "double-brokering" one of the shipments.

12. Double-brokering is the practice of accepting a shipping contract from a broker and, rather than delivering the shipment, selling the delivery of the shipment to another carrier to earn a profit without transporting the shipment.

13. On March 29, 2021, Kordun emailed Almasi denying his allegation about "double-brokering," which had been based upon one of the shipments arriving at the recipient's location in a Super Ego-branded trailer.

14. Kordun explained that Kordun leases trailers from a company, Super Ego Inc., that uses prominent branding on its trailers. Super Ego Inc. is not a motor carrier and did not transport the cargo.

15. On March 31, 2021, Almasi, published a report on www.carrier411.com regarding Kordun (the "Kordun Report").

16. The Kordun Report states:

> **Report Submitted March 31, 2021 3:21 PM EST**
>
> LASZLO ALMASI with LURCH LOGISTICS, LLC acknowledged this report is an accurate representation of facts and can provide documented proof to support all reported items. If you have any questions about this report, please contact LASZLO ALMASI at (910) 899-1927.
>
> **Report Submitted By**
>
> LASZLO ALMASI
> LURCH LOGISTICS, LLC
> PO BOX 178
> HAMPSTEAD, NC 28443
>
> PHONE: (910) 899-1927
> FAX: (910) 447-4166
> EMAIL: FREIGHT@LURCHLOGISTICS.COM
>
> **Reported Company**
>
> KORDUN EXPRESS INC
> 205 W GRAND AVE SUITE 125
> BENSENVILLE, IL 60106
>
> PHONE: (630) 480-6423
> FAX: (630) 480-6039
> EMAIL: SAFETY@KORDUNEXPRESS.NET
> DOCKET: MC594223
>
> **Reported Items**
>
> - UNAUTHORIZED RE-BROKERING OF SHIPMENT
> - FRAUDULENT ACTIVITY
> - UNETHICAL OR DECEPTIVE BUSINESS PRACTICES
>
> **Reported Comments**
>
> TENDERED THREE LOADS TO KORDUN, WHO IMMEDIATELY RE-BROKERED/INTERLINED TWO LOADS TO FLOYD, MC977366 (CARRIER WITH

> CONDITIONAL SAFETY RATING). KORDUN VIOLATED OUR CONTRACT AND WILL BE FINED PURSUANT TO TERMS AGREED ON OUR CONTRACT. THERE ARE 3 MCS (1040945, 977366, 594223) THAT I HAVE FOUND THAT ARE OWNED BY THE SAME INDIVIDUAL. WE HAVE DOCS IN HOUSE TO PROVE LOAD WAS RE-BROKERED. GAVE CARR OPPORTUNITY TO REDEEM THEMSELVES, BUT THEY DROPPED LOAD ONCE THEY REALIZED WE WERE ON TO THEM.

17. On March 31, 2021, Almasi published a report on www.carrier411.com regarding Floyd (the "Floyd Report").

18. The Floyd Report states:

> Report Submitted March 31, 2021 3:27 PM EST
>
> LASZLO ALMASI with LURCH LOGISTICS, LLC acknowledged this report is an accurate representation of facts and can provide documented proof to support all reported items. If you have any questions about this report, please contact LASZLO ALMASI at (910) 899-1927.
>
> **Report Submitted By**
>
> LASZLO ALMASI
> LURCH LOGISTICS, LLC
> PO BOX 178
> HAMPSTEAD, NC 28443
>
> PHONE: (910) 899-1927
> FAX: (910) 447-4166
> EMAIL: FREIGHT@LURCHLOGISTICS.COM
>
> **Reported Company**
>
> FLOYD INC
> 729 N ROUTE 83 SUITE 324
> BENSENVILLE, IL 60106
>
> PHONE: (630) 233-9652
> FAX: (312) 267-1116
> EMAIL: SAFETY@FLOYDLOGISTICS.COM
> DOCKET: MC977366
>
> **Reported Items**
>
> - UNAUTHORIZED RE-BROKERING OF SHIPMENT
> - FRAUDULENT ACTIVITY
> - UNETHICAL OR DECEPTIVE BUSINESS PRACTICES
>
> **Reported Comments**
>
> TENDERED 2 LOADS TO KORDUN, MC594223, WHO IMMEDIATELY RE-BROKERED/INTERLINED BOTH LOADS TO FLOYD, MC977366 (CARRIER WITH
>
> CONDITIONAL SAFETY RATING). KORDUN VIOLATED OUR CONTRACT AND WILL BE FINED PURSUANT TO TERMS AGREED ON OUR CONTRACT. THERE ARE 3 MCS (1040945, 977366, 594223) THAT I HAVE FOUND THAT ARE OWNED BY THE SAME INDIVIDUAL. WE HAVE DOCS IN HOUSE TO PROVE LOAD WAS RE-BROKERED. GAVE CARR OPPORTUNITY TO REDEEM THEMSELVES, BUT THEY DROPPED LOAD ONCE THEY REALIZED WE WERE ON TO THEM.

19. The Kordun Report and the Floyd Report (collectively, the "Reports") contain numerous statements that accuse Kordun and Floyd, respectively, of lacking integrity and ability in their businesses.

20. For example, Almasi asserts in the Reports that Kordun and Floyd:

    a. Committed an "UNAUTHORIZED RE-BROKERING OF SHIPMENT"

    b. Engaged in "FRAUDULENT ACTIVITY"

    c. Used "UNETHICAL OR DECEPTIVE BUSINESS PRACTICES"

21. The Reports also contain allegations of criminal conduct by Kordun and Floyd. Specifically, Almasi alleged "FRAUDULENT ACTIVITY."

22. Additionally, Almasi implied, by alleging that Kordun "WILL BE FINED", that Kordun committed a crime.

23. All the above statements are false. First, Kordun did not "re-broker" any of the Shipments. It did not sell any of the shipments.

24. Second, neither Kordun nor Floyd engaged in "fraudulent activity." In the Reports, Almasi does not and cannot specify any false statement made by Kordun or Floyd made to and relied upon by Almasi or Lurch to their detriment. Nor can he establish that Kordun or Floyd acted with any intention to deceive.

25. Third, neither Kordun nor Floyd's conduct was "unethical or deceptive." As stated above, Kordun did not profit or seek to profit by having another entity carry the shipments, and neither Kordun nor Floyd made a deceptive misrepresentation.

26. After publishing the Reports, on April 1, 2021, Almasi informed Kordun that the shipment involving a Kordun truck and Super Ego trailer was "not the load being reported" but

that the other two shipments were the issue. He claimed the other two had been carried by Floyd trucks.

27. On April 1, 2021, Kordun explained that Kordun and Floyd are owned by relatives, that they sometimes borrow equipment from one another for efficiency and convenience, that they are cross-insured, and that they never sell shipments (*i.e.* double-broker).

28. Kordun asked Almasi to remove the Reports from www.carrier411.com, and Almasi refused.

29. Kordun and Floyd's communications regarding the Reports became confrontational.

30. Brokers in the trucking industry use www.carrier411.com to research motor carriers, like Kordun and Floyd, before contracting with them to carry loads of cargo.

31. Negative reports about a carrier published on www.carrier411.com make it considerably less likely that a broker will contract with that carrier.

32. Kordun and Floyd experienced a significant decline in business following Almasi's publication of the Reports.

33. Kordun and Floyd continue to experience a loss in business, with fewer brokers hiring them, as of this filing.

34. In publishing the Reports and refusing to remove them from www.carrier411.com, Almasi has acted intentionally, willfully, and with reckless disregard for the truth. Almasi's intention was to harm Kordun and Floyd by causing brokers to decline to engage in business with them.

### Count I: Defamation *Per Se* (Kordun against Almasi)

35. Kordun incorporates the allegations set forth in paragraphs 1–34 as if fully set forth here.

36. Almasi made false statements about Kordun. Specifically, he stated: 1) Kordun "re-brokered" shipments from Lurch; 2) Kordun committed "fraudulent activity"; and 3) Kordun engaged in "unethical or deceptive business practices."

37. Almasi, without privilege or justification, published the false statements on the internet on www.carrier411.com.

38. The statements impute the commission of a crime and a lack of integrity and ability against Kordun in its business.

39. Almasi's publication of the Reports has caused Kordun to lose business. At least nine brokers have ceased doing business with Kordun because of the Reports, causing Kordun damages exceeding $75,000.

40. Almasi has acted intentionally, willfully, and with reckless disregard for the truth.

### Count II: Defamation *Per Se* (Floyd against Almasi)

41. Floyd incorporates the allegations set forth in paragraphs 1–34 as if fully set forth here.

42. Almasi made false statements about Floyd. Specifically, he stated: 1) Floyd "re-brokered" shipments from Lurch; 2) Floyd committed "fraudulent activity"; and 3) Floyd engaged in "unethical or deceptive business practices."

43. Almasi, without privilege or justification, published the false statements on the internet on www.carrier411.com.

44. The statements impute the commission of a crime and a lack of integrity and ability against Floyd in its business.

45. Almasi's publication of the Reports has caused Floyd to lose business. At least five brokers have ceased doing business with Floyd because of the Reports, causing Floyd damages exceeding $75,000.

46. Almasi has acted intentionally, willfully, and with reckless disregard for the truth.

### Count III: Unfair and Deceptive Practices, N.C. Gen. Stat. § 75-1.1
### (Kordun against Almasi)

47. Kordun incorporates the allegations set forth in paragraphs 1–34 as if fully set forth here.

48. Almasi committed deceptive acts by falsely stating that: 1) Kordun "re-brokered" shipments from Lurch; 2) Kordun committed "fraudulent activity"; and, 3) Kordun engaged in "unethical or deceptive business practices" in the Reports.

49. Almasi made the Reports in a commercial forum used by industry members for research and due diligence purposes. Almasi's Reports also affected commerce by discouraging industry members from conducting business with Kordun.

50. Almasi's deceptive acts caused injury to Kordun's business because Kordun experienced a sudden and significant decline in business shortly after the Reports' publication.

### Count IV: Unfair and Deceptive Practices, N.C. Gen. Stat. § 75-1.1
### (Floyd against Almasi)

51. Floyd incorporates the allegations set forth in paragraphs 1–34 as if fully set forth here.

52. Almasi committed deceptive acts by falsely stating that: 1) Floyd "re-brokered" shipments from Lurch; 2) Floyd committed "fraudulent activity"; and, 3) Floyd engaged in "unethical or deceptive business practices" in the Reports.

53. Almasi made the Reports in a commercial forum used by industry members for research and due diligence purposes. Almasi's Reports also affected commerce by discouraging industry members from conducting business with Floyd.

54. Almasi's deceptive acts caused injury to Floyd's business because Floyd experienced a sudden and significant decline in business shortly after the Reports' publication.

**Prayer for Relief**

WHEREFORE, Plaintiffs Kordun and Floyd each respectfully request that this Court:

    a. Enter judgment against Defendant Laszlo Almasi for defamation *per se* and unfair and deceptive trade practices;

    b. Award Plaintiffs compensatory damages;

    c. Award Plaintiffs punitive damages and/or treble damages pursuant to N.C. Gen. Stat. § 75-16;

    d. Tax the costs of this action and attorneys' fees against Defendant, pursuant to N.C. Gen. Stat. § 75-16.1 and as otherwise allowed by law;

    e. Hold a jury trial on all issues so triable; and

    f. Grant such other and further relief as this Court deems just and proper.

This 2nd day of July 2021.

        */s/ Matthew A. Wood*
        Matthew A. Wood
        Litico Law Group
        3701 Algonquin Road, Suite 450
        Rolling Meadows, Illinois 60008
        Phone: (847) 307-5942
        email: maw@litico.law
        IL Bar No. 630431
        *Attorneys for Plaintiffs\**

        *Notice of Special Counsel forthcoming

        */s/ Jeremy M. Wilson*
        Jeremy M. Wilson
        N.C. State Bar I.D. No.: 43301
        email: docket@wardandsmith.com
        email: jw@wardandsmith.com
        Jordan M. Spanner
        N.C. State Bar I.D. No.: 53622
        email: jmspanner@wardandsmith.com
        For the firm of Ward and Smith, P.A.
        Post Office Box 7068
        Wilmington, North Carolina 28406-7068
        Phone: (910) 794-4870
        *Local Civil Rule 83.1(d) Counsel for Plaintiffs*